```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY PETTIT,

                    Plaintiff,           1:18-cv-00221-MAT
         -v-                             **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____
```

## INTRODUCTION

Timothy Pettit ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded for further administrative proceedings, and Defendant's motion is denied.

## PROCEDURAL STATUS

Plaintiff protectively filed for Title II benefits on September 13, 2013, alleging an onset date of June 1, 2013. The claim was initially denied on November 26, 2013. Plaintiff requested a hearing, which was conducted by administrative law judge Timothy M. McGuan ("the ALJ") on March 15, 2016, in Buffalo,

New York. Plaintiff appeared with counsel and testified. The ALJ issued an unfavorable decision on October 4, 2016. In relevant part, the ALJ found that Plaintiff's major depressive disorder and alcohol dependence were severe impairments, but his back complaints and status post-surgery for a burst appendix were not severe. T.19.[1] After finding that Plaintiff did not meet or medically equal a listed impairment, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, but required a sit-stand option every hour and could only occasionally perform all postural activities; occasionally understand, remember, and carry out complex and detailed tasks and instructions; and occasionally interact with the public. T. 21. In light of his RFC, Plaintiff could not perform his past relevant work as a carpenter, a skilled medium exertional job which he performed at the very heavy exertional level. However, considering Plaintiff's age (45 years-old), education (GED diploma), work experience, and RFC, and the vocational expert's testimony, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including cabinet assembler and machine tender. Accordingly, the ALJ entered a finding a "not disabled." Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied. He then timely commenced this action.

---

[1] Citations to "T." refer to pages in the certified administrative transcript.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that reversal of the Commissioner's decision and remand for further proceedings is required on the following grounds: (1) the ALJ abdicated his duty to develop the

record and failed to subpoena several years of treatment notes from Plaintiff's treating psychiatrist, Dr. Alfonso Tan, which resulted in an RFC unsupported by substantial evidence; and (2) the ALJ failed to properly evaluate Plaintiff's ability to deal with stress. The Commissioner responds that the RFC was supported by substantial evidence, and that the ALJ had sufficient records from Dr. Tan, as well as other records, to determine Plaintiff's limitations resulting from his mental impairments, including his ability to deal with stress.

### A. Failure to Subpoena Dr. Tan's Records

At the hearing, Plaintiff's attorney explained that Dr. Tan at University Psychiatry had not provided his treatment notes from 2013. T.32-33. Following the hearing, Plaintiff's attorney asked the ALJ to subpoena the records. T.184. The Social Security Administration ("SSA") sent a request to Dr. Tan's office in August 2016, and was informed on September 9, 2016, that Dr. Tan would be submitting the records by the following week. T.191. However, no records were received, and the ALJ never issued a subpoena.[2] The ALJ therefore rendered his decision without any records from Plaintiff's treating psychiatrist from October 2013, until October 2016.

---

[2] An ALJ has the power to issue subpoenas for medical records. *See* 20 C.F.R. § 404.950(d)(1) ("When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.").

"[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47; citing *Pratts v. Chater*, 94 F.3d at 37 ("It is the rule in [the Second] circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty . . . exists even when . . . the claimant is represented by counsel.") (citations omitted; (alterations in original)). "The obligation to develop the record includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled." *Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) (holding that remand was required to obtain claimant's updated special education and psychiatric records where the transcript only contained records from certain years) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512)).

The Court finds that the absence of three years of records from Plaintiff's treating psychiatrist Dr. Tan created a significant gap in the record that the ALJ was under an obligation to fill, particularly where Plaintiff's counsel informed the ALJ of

her inability to obtain the records. Although, as the Commissioner points out, there were two years of records from Dr. Tan, only four months of those records cover the relevant period. Plaintiff's Reply (Docket No. 11) at 2 (citing T.328-32)). Thus, as Plaintiff argues, they only provide insight into the very beginning of the disability period. The only severe impairments found by the ALJ were Plaintiff's major depressive disorder and alcohol dependence, and these were precisely the conditions for which Dr. Tan treated Plaintiff. These records were "central to the disability determination," *Apolito v. Astrue*, No. 11-CV-1065 TJM/VEB, 2012 WL 6787365, at *4 (N.D.N.Y. Nov. 5, 2012), *report and recommendation adopted sub nom. Apolito v. Comm'r of Soc. Sec.*, No. 1:11-CV-1065, 2013 WL 66706 (N.D.N.Y. Jan. 4, 2013), such that the ALJ was under the obligation to obtain them. *See Apolito*, 2012 WL 6787365, at *5 (where ALJ was advised by claimant's attorney that "telephone, fax, e-mail and mail" requests were unsuccessful in generating a response from treating psychiatrist, the ALJ should have either issued a subpoena or recommended that counsel request a subpoena before closing the administrative record; accordingly, remand was necessary for further development of the record with regard to treating psychiatrist's treatment notes).

**B. Failure to Adequately Evaluate Plaintiff's Ability to Deal with Stress**

The ALJ determined that consultative psychologist Dr. Janine Ippolito's opinion warranted "great weight." Plaintiff contends

that the ALJ failed to explain how he reconciled Dr. Ippolito's statement that Plaintiff would have moderate limitations in dealing with stress with the mental aspect of the RFC assessment.

The Commissioner argues that Plaintiff has omitted Dr. Ippolito's conclusion that the symptoms from his mental impairments "did not appear to be significant enough to interfere with [his] ability to function on a daily basis." T.359. The Court finds that argument unavailing. First, Dr. Ippolito did not define the "ability to function on a daily basis," an amorphous concept that could mean different things for different people in different contexts. For instance, it could be as minimal as being capable of performing one's activities of daily living independently. Second, the Commissioner has not cited any authority for the proposition that simply being able to "function on a daily basis" is the same as, or substantially equivalent to, the ability to perform remunerative employment, in a competitive workplace environment, on a full-time basis.

"An ALJ is required to specifically inquire [into] and analyze a claimant's ability to manage stress." *Booker v. Colvin*, No. 14-CV-407S, 2015 WL 4603958, at *3 (W.D.N.Y. July 30, 2015); *accord, e.g., Burke v. Berryhill*, No. 6:17-CV-06369(MAT), 2018 WL 1940260, at *4 (W.D.N.Y. Apr. 25, 2018). "Because stress is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called 'low-stress' jobs, and the Commissioner must therefore make specific findings about the

nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F. Supp.2d 183, 189 (W.D.N.Y. 2006) (internal quotations omitted).

Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (S.S.A. 1985), observes that "determining whether . . . individuals [with mental impairments] will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult." *Id.* at *5. SSR 85-15 explains that this difficulty arises because individuals with mental illnesses "adopt a highly restricted and/or inflexible lifestyle within which they appear to function well." *Id.* at *6; *see also Hidalgo v. Colvin*, No. 12CV9009-LTS-SN, 2014 WL 2884018, at *19 (S.D.N.Y. June 25, 2014) ("[P]eople who have chronic affective disorders often structure their lives in such a way as to minimize stress and reduce symptoms.") (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E) (individuals who structure their lives in such a way "may be much more impaired for work than [their] symptoms and signs would indicate")). SSR 85-15 notes that, when claimants are in structured settings, they are able to function adequately "by lowering psychological pressures, by medication, and by support from services such as outpatient facilities. . . ." SSR 85-15, 1985 WL 56857, at *6.

Here, Plaintiff appears to have adopted the type of strategy referred to in SSR 85-15. He testified that to control his psychiatric symptoms, he maintained a "stress-free environment."

T.46. This included not making decisions "quickly;" when he had to make a "firm decision," he doubted himself. T.46-47. Plaintiff reported that he had difficulty with change and that it took him "a while" to adjust to new situations. T.48. He did not feel he could manage deadlines, that his concentration would not be dependable enough for an employer to rely on, and that he "would be a disappointment." T.51. The Commissioner argues that the only things that caused Plaintiff stress were "dealing with people and making decisions," but "[t]he occupations identified by the ALJ do not raise such concerns." Defendant's Memorandum of Law (Docket No. 10-1) at 16. The Commissioner cites the description in the Dictionary of Occupational Title ("DOT") for the job of machine tender which "lists interaction with people as 'not significant,' also indicating the activities of talking and hearing were 'not present'." *Id.* (quoting DOT 603.665-010, 1991 WL 684761. Thus, the Commissioner concludes, the job of machine tender could be performed even greater limitations than those found by the ALJ, rendering harmless any error in the ALJ's analysis of the effects of stress on Plaintiff. *Id.*

The Court similarly finds this argument unpersuasive. As an initial matter, it represents an impermissible *post hoc* rationalization of the ALJ's decision. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (stating that a reviewing court "may not accept appellate counsel's post hoc rationalizations for agency action;" refusing to accept Commissioner's explanation for weight

-9-

given to treating physician) (quoting *Burlington Truck Lines, Inc. v. United States,* , 371 U.S. 156, 168 (1962)). "The ALJ, not the Commissioner's lawyers, must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable meaningful reviews.'" *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp.2d 133, 144 (N.D.N.Y. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); internal citations omitted in original).

Moreover, the Commissioner has misleadingly parsed certain statements from the DOT's description of the job of machine tender. The Commissioner suggests that because the DOT lists "talking" and "hearing" as "not present", that means that a machine tender *never* would have to interact with people. That assertion defies common sense and is contradicted by the description itself, which states that a machine tender must "carry out detailed but uninvolved written or *oral* instructions." 603.665-010 BUFFING-MACHINE TENDER, DICOT 603.665-010. Furthermore, the DOT states that a machine tender must be able to "[s]peak simple sentences, using normal word order, and present and past tenses," *id.,* presumably not to himself, but to another human being. Finally, it is unclear to the Court how "talking" and "hearing," in and of themselves, are relevant to decision-making and Plaintiff's limitations in dealing with the stress surrounding the need to make decisions. Thus, the Court does not accept the Commissioner's argument that the ALJ's failure to make a particularized assessment of Plaintiff's ability to deal with stress was harmless.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this decision. In particular, the ALJ is directed to (1) issue a subpoena to obtain the missing records from Dr. Tan; and (2) make a particularized analysis of Plaintiff's ability to deal with stress as discussed in SSR 85-15. The Commissioner's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   September 17, 2019
         Rochester, New York